USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/11/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER CARPENTER,

                Plaintiff,

-against-

CITY OF MOUNT VERNON, MAYOR ERNEST
D. DAVIS, COMMISSIONER TERRANCE
RAYNOR, CHIEF JAMES M. DUMSER,
DEPUTY COMMISSIONER RICHARD BURKE,
CAPTAIN MICHAEL GOLDMAN,
LIEUTENANT MARIO CURZIO, and
LIEUTENANT JOSEPH HUNCE, in their official
and individual capacities,

                Defendants.

15-cv-0661 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Jennifer Carpenter brings this action in her third amended complaint ("Complaint," ECF No. 45) against Defendants City of Mount Vernon, Mayor Ernest D. Davis,[1] Commissioner Terrance Raynor, Chief James M. Dumser, Deputy Commissioner Richard Burke, Captain Michael Goldman, Lieutenant Mario Curzio, and Lieutenant Joseph Hunce in their official and individual capacities alleging claims of gender discrimination and retaliation under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-17 ("Title VII"); and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–97.[2]

---

[1] Plaintiff spells Mayor Ernest D. Davis's name 'Earnst' in the caption for the Third Amended Complaint ("Complaint"). The correct spelling, "Ernest," is reflected in this opinion's caption.

[2] Plaintiff also asserted a disability discrimination claim but withdrew that claim in her opposition to Defendants' motion for summary judgment. (Pl.'s Opp'n p. 1.)

Before the Court is Defendants' motion for summary judgment ("Defs.' Mot. for Summ. J.," ECF No. 78). For the following reasons, the motion is GRANTED.

## BACKGROUND

The following facts derive from parties' respective Local Rule 56.1 statements, pleadings, and a review of the record.[3]

Plaintiff is a female employee of the Mount Vernon Police Department ("MVPD"). (Compl. ¶¶ 16, 59.) In December 2011, Plaintiff was promoted to Sergeant in the MVPD. (Pl.'s Rule 56.1 Counter-Statement ("Pl.'s 56.1") ¶ 1, ECF No. 82.) Plaintiff "was the first and only Black female supervisory officer in the history of the MVPD." (Pl.'s Decl. ¶ 8, ECF No. 81.) In January 2012, Plaintiff was assigned to the MVPD's "Squad 3." (Pl.'s 56.1 ¶ 3.)

Plaintiff states that she has been discriminated against based on her gender throughout her employment with MVPD. During Plaintiff's first roll call after being assigned to Squad 3 in January 2012, she was not introduced as the squad's Sergeant by her supervisor, Defendant Nawrocki, despite an informal MVPD policy to introduce new supervisors. (Pl. Decl. ¶¶ 11 – 12.) In an October 2013 letter to Defendant Nawrocki, Plaintiff stated that defendant Nawrocki told her to "control her emotions." (Pl. 56.1 ¶ 29); (Defs.' Ex. Q, ECF No. 78.) On January 31, 2014 and March 9, 2014, Plaintiff submitted multiple requests to attend several training courses, and those requests were denied even though Plaintiff's male counter parts had previously attended similar training sessions.[4] (Defs.' Statement of Material Facts Not in Dispute ("Defs.' 56.1") ¶¶ 44 – 54, ECF No. 79); (Pl. Decl. ¶ 25.)

---

[3] Where only one party's 56.1 Statement is cited, the actual statement is either undisputed or no admissible evidence has been presented to refute that fact.
[4] The trainings were designed for new officers or those looking for a refresher. (Pl.'s 56.1 ¶¶ 48, 50.)

Plaintiff was also repeatedly instructed to leave police headquarters while male patrol supervisors were not given similar instructions. Throughout January and February of 2014, Defendant Curzio, and Defendant Dumser's direction, told Plaintiff on multiple occasions to leave police headquarters even though male patrol supervisors were not similarly instructed to leave headquarters. (Defs.' 56.1 ¶¶ 56 – 58); (Pl. Decl. ¶¶ 29 – 30.) As a "Street Supervisor," Plaintiff was required to be working on the streets. (Pl. 56.1 ¶¶ 58 – 59, 62.) Defendant Curzio arranged to meet with Plaintiff to discuss any treatment she believed to be unfair. (Pl.'s 56.1 ¶ 63); (Defs.' Ex. D (Curzio Dep. Tr. 99:20 – 24).) On January 30, 2014, Plaintiff remained in police headquarters for her entire shift. The MVPD Internal Affairs Supervisor filed a report against Plaintiff to document that she failed to supervise her patrol squad on January 30, 2014. (*Id.* ¶ 77.) Surveillance video showed that Plaintiff remained in the supervisors' office at headquarters for four hours and then remained in the locker room for approximately three hours of her eight hour shift. (*Id.* ¶ 78.)

, Plaintiff complained on multiple occasions, verbally and in writing, to her superiors, Human Resources, and the EEOC about alleged discriminatory practices and behavior in the MVPD. On November 29, 2012, Plaintiff submitted a letter to Defendant Davis, stating that she was being treated disparately due to discrimination. (Defs.' Ex. M.) Plaintiff sent a letter to Defendant Nawrocki on May 21, 2013 to notify him that his management style was harmful to women in MVPD and sent him another letter on October 24, 2013 to inform him that comments he made to her were "sexist, condescending and insulting." (Defs.' Exs. Q & CC.) On December 9, 2013, Plaintiff submitted a complaint to Defendant Raynor which included claims of gender discrimination against Defendant Hunce. (Defs.' Ex. U.) Plaintiff met with Defendant Davis on January 17, 2014 to discuss alleged gender based discrimination. (Pl. 56.1 ¶¶ 66 – 67.)

On February 6, 7, and 24, 2014, Plaintiff complained to Human Resources about discrimination, including that Defendants Curzio and Dumser were subjecting her to a double standard by questioning and limiting her presence in police headquarters. (*Id.* ¶¶ 69 – 70.) On March 24, 2014, Plaintiff filed a gender discrimination and retaliation charge with the EEOC. (*Id.* ¶ 117.) The EEOC declined to accept Plaintiff's charge and closed the file on October 31, 2014.[5] (*Id.* ¶¶ 120.) In an April 4, 2014 letter to Defendant Curzio, Plaintiff stated that she was not allowed to do roll call due to a "pattern of favoritism" and that she was being treated differently than a male officer. (Pl.'s 56.1 ¶ 15.) Plaintiff sent the president of the Patrolmen's Benevolent Association ("PBA") a letter on May 7, 2014 and said that she was being subjected to a pattern of discriminatory conduct. (Defs.' Ex. QQ.) She served a Notice of Claim, under New York General Municipal Law § 50-e, two days later which included claims of gender discrimination and retaliation. (Pl.'s 56.1 ¶ 133.) Defendant Nawrocki was responsible for investigating Plaintiff's complaints to Human Resources, and he issued a report dated May 21, 2014. (Pl. 56.1 ¶ 75.) On January 20, 2015, Plaintiff filed a second charge with the EEOC. (Pl.'s 56.1 ¶ 149.)

A MVPD captain emailed patrol division supervisors on March 27, 2014 to instruct them to review their attendance records and forward reports of employees who fell under the "chronic absent"[6] designation. (*Id.* ¶ 124.) On April 7, 2014, Plaintiff was informed that she had been designated as a chronic absentee. (*Id.* ¶ 125.) Plaintiff did not appeal this designation using

---

[5] The EEOC's recommendation for closure indicated that there was no reasonable cause for Plaintiff's charge. (Pl. 56.1 ¶ 121.) In support of its recommendation, the EEOC cited to evidence provided by the MVPD that (1) Plaintiff's subordinates were disciplined appropriately based on Plaintiff's recommendation, (2) male and female employees filed complaints against Plaintiff due to her unprofessional behavior, (3) the city investigated Plaintiff's complaints, and (4) no actions taken toward Plaintiff were retaliatory or based on gender-related bias. (Pl. 56.1 ¶ 121.)

[6] Mount Vernon policy lists the specific criteria for employees to be designated as chronic absentee. (*Id.* ¶ 123.)

4

proper procedures, but sent a letter to the PBA president which went unanswered. (*Id.* ¶¶ 127 – 30.)

On April 10, 2014, Defendant Curzio was instructed to obtain a copy of Plaintiff's memo book[7] containing the entry for January 30, 2014. (*Id.* ¶ 82.) Plaintiff stated that she had left her current memo book in a different pair of pants, and she was instructed to submit a written report about her inability to produce her memo book or a record of her January 30 entry. (*Id.* ¶¶ 83 – 84); (Defs.' 56.1 ¶ 84.) The MVPD Internal Affairs Supervisor asked the MVPD's SSD clerk to produce Plaintiff's most current memo book, but the clerk found that Plaintiff had not turned in any memo books since Plaintiff's appointment to sergeant in December 2011. (*Id.* ¶¶ 86 – 87.) Plaintiff was again ordered to produce her memo book on April 14, 2014 and Plaintiff went to retrieve the memo book from her locker in the basement. (*Id.* ¶¶ 88 – 89.) When Plaintiff was returning up the stairs, she allegedly tripped and hurt her knee. (*Id.* ¶ 89.) While waiting for an ambulance, Defendant Curzio asked Plaintiff to produce the memo book she had gone to the basement to retrieve, but Plaintiff never produced a her memo book. (*Id.* ¶¶ 90, 94.) At the hospital, Plaintiff was diagnosed with a possible torn meniscus. (Defs.' Ex. A (Pl. Dep. Tr. 92:7 – 12).) Plaintiff applied for but was denied 207-c benefits[8] based on a report by Dr. Scott Coyne. (*Id.* ¶ 106.) Plaintiff appealed the denial and, at a hearing, Dr. Coyne testified that there was no evidence of any acute injury to the right knee after the April 14, 2014 incident and that the injury was preexisting. (*Id.* ¶¶ 107 – 08.) Defendant Raynor upheld the denial. (*Id.* ¶ 110.)

---

[7] Lieutenants, sergeants, and police officers of MVPD are required to maintain a memorandum book ("memo book") logging all calls and patrol activity for each tour. They are also required to document all individual police action taken, including times in and out of police headquarters during a tour of duty, whether dispatched or not. (Pl. 56.1 ¶¶ 80 – 81.)

[8] New York General Municipal Law § 207-c provides for payment of salary, wages, medical, and hospital expenses for policemen with injuries or illnesses incurred in the performance of duties. N.Y. Gen. Mun. Law § 207-c.

On July 17, 2014, Defendant Raynor ordered Plaintiff to report for a fitness-of-duty examination, scheduled for July 28, 2014. (*Id.* ¶ 142.) Plaintiff complained by letter to a Mount Vernon city council member, a commissioner of the Mount Vernon Civil Service Department, and the PBA president that she was being subjected to the examination in retaliation for her complaints to Human Resources. (Defs.' Exs. TT, UU, & VV.) However, Plaintiff reported for the examination and the examiner determined that Plaintiff was psychologically fit for duty. (Pl.'s 56.1 ¶ 147.)

Due to the torn meniscus, Plaintiff was unable to work after her April 14, 2014 fall. (Defs.' Ex. A (Pl. Dep. Tr. 114:3 – 10).) Plaintiff requested a return to work light duty on October 7, 2014. (*Id.* ¶ 112.) Plaintiff's request was denied because she was requesting that she be excused from performing the essential functions of a patrol supervisor. (*Id.* ¶ 115.)

In the summer of 2015, MVPD received a letter and copies of police reports in the mail with postage indicating the package was mailed to a reporter out of a Westchester County post office. (*Id.* ¶¶ 151 – 52); (Defs.' Ex. ZZ.) Because the package contained sensitive personnel-related information, an investigation was required to determine who leaked the information. (Pl.'s 56.1 ¶ 153.) The investigation revealed that Plaintiff may have sent the letter using her personal debit card as payment for postage. (*Id.* ¶ 154.) Defendant Raynor endorsed a subpoena for Internal Affairs to gather Plaintiff's bank records to determine whether she purchased the postage. (*Id.* ¶ 155.)

Plaintiff returned to work at full duty in January 2016. (*Id.* ¶ 158.)

On January 29, 2015, Plaintiff filed her complaint (ECF No. 1) bringing the action currently before the Court, and Plaintiff filed two amended complaints (ECF Nos. 14 & 25.) Defendants moved to dismiss Plaintiff's second amended complaint on October 15, 2015. (ECF

No. 28.) The Court granted in part and denied in part Defendants' motion on July 27, 2016 ("July Opinion", ECF 38.) *Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 284 (S.D.N.Y. 2016). The Court dismissed Plaintiff's claims for gender discrimination under Title VII, NYSHRL, and 42 U.S.C. § 1983. *Id.* Plaintiff's claims for retaliation and disability discrimination under Title VII, NYSHRL, § 1983, and the ADA remained. *Id.* Plaintiff then filed the Complaint at issue. Currently before the Court is Defendants' motion for summary judgment. Plaintiff withdrew her claims for disability discrimination in Plaintiff's Opp'n to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition"), and so the Court will consider Defendants' motion for summary judgment on Plaintiff's gender discrimination and retaliation claims. (Pl.'s Opp'n p. 1, ECF No. 83.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013).

A court should grant summary judgment when a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in

7

the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## DISCUSSION

### I. Gender Discrimination Claims

To survive a motion for summary judgment on gender discrimination claims, a plaintiff must establish (1) she is a member of a protected class; (2) she is qualified for her position; (3) she was subjected to an adverse employment action; and (4) the circumstances give rise to an interference of discrimination.[9] *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). To constitute an adverse employment action for a discrimination claim, the action must cause "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir.2008). At the motion to dismiss stage in the July Opinion, this Court dismissed Plaintiff's gender discrimination claims because Plaintiff failed to sufficiently allege an adverse employment action or an atmosphere of adverse employment actions.[10] *Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 280 – 83 (S.D.N.Y. 2016). Plaintiff's Opposition contains no arguments regarding her gender discrimination claims. (*See generally*

---

[9] If a plaintiff establishes these elements, courts proceed with the rest of the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because there is not sufficient evidence to support Plaintiff's prima facie gender discrimination case, the Court need not proceed with this analysis.

[10] There are no significant differences between Plaintiff's second amended complaint which was considered in the July Opinion and the Complaint addressed by Defendants' motion for summary judgment.

Pl.'s Opp'n) "In the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims . . . that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *see Ziming Shen v. City of New York*, 725 F. App'x 7, 17 (2d Cir. 2018); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (holding that a plaintiff abandoned his hostile work environment claims at the summary judgment stage by failing to raise the claims in his opposition to the defendant's motion for summary judgment). Therefore, the Court considers Plaintiff's gender discrimination claims to be abandoned.

Even if Plaintiff presented arguments in support of her gender discrimination claim in Plaintiff's Opposition, there is no admissible evidence in the record to establish that Plaintiff endured a materially adverse employment action under a gender discrimination analysis or that there are circumstances giving rise to the inference of gender discrimination. *See Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 51 (2d Cir. 2014) (granting the defendant's motion for summary judgment on the plaintiff's gender discrimination claim because the plaintiff failed to raise a material issue of fact as to whether he suffered an adverse employment action).

Therefore, Defendants are entitled to judgment on Plaintiff's gender discrimination claims as a matter of law. Defendants' motion for summary judgment on Plaintiff's gender discrimination claims is granted.

## II. Retaliation Claims

Plaintiff claims that she was retaliated against for reporting gender discrimination to Human Resources and her superiors and for filing charges with the EEOC. She brings her retaliation claims under Title VII, NYSHRL, and § 1983. Defendants move for summary judgment because Plaintiff fails to establish that retaliation was the but-for cause of a materially adverse employment action. (Defs.' Mot. for Summ. J. p. 11.)

The Second Circuit has held that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."[11] *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997); *see Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008). Additionally, "the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII," except that the plaintiffs must also establish that the defendants acted under the color of law.[12] *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). Accordingly, the Court will address Plaintiff's retaliation claims together.

Title VII prohibits any employer from discriminating against an employee because she "had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a prima facie case for retaliation, a Plaintiff must allege that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Kessler v. Westchester Dep't of Soc. Serv.*, 461 F.3d 199, 205–06, 207–10 (2d Cir. 2006)). The plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Cent. v. Nassar*, 570 U.S. 338, 360 (2013). Causation may be established by showing that the retaliation was close in time to the plaintiff's

---

[11] "One notable exception to this rule is that, while an individual defendant with supervisory control may not be held personally liable under Title VII, an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he 'actually participates in the conduct giving rise to the discrimination claim.'" *Rojas*, 660 F.3d at 107 n.10.

[12] To act under the color of law for the purposes of § 1983, the defendant "have exercised power 'possessed by virtue of [ ] law and made possible only because the wrongdoer is clothed with the authority of [ ] law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988); *see also Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997). Defendants, city employees, acted under the color of law.

protected action, that similarly situated employees were treated differently, or by direct proof of retaliatory intent. *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 450 (S.D.N.Y. 2002); *see Barkley v. Penn Yan Sch. Dist.*, 442 F. App'x 581, 584 (2d Cir. 2011).

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 – 03 (1973). If the defendant meets this burden, the plaintiff must demonstrate that the defendant's stated reason is merely pretext and "retaliation was a substantial reason for the adverse employment action." *Id.* at 804.

Plaintiff lists many "adverse actions" in Plaintiff's Opposition, but most of those actions are not adverse employment actions or, as demonstrated by the admissible evidence, are consequences of Plaintiff's own actions. Adverse employment action in retaliation claims includes employer actions that would be materially adverse to the reasonable employee. "Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Plaintiff claims that the following "adverse actions" are adverse employment actions under the retaliation standard: denial of training; being ordered to leave headquarters; lack of reasonable investigation into her discrimination claims; her "chronic absentee" designation; the denial of her request for 207-c benefits; her fitness for duty examination; the internal affairs investigation; and the denial of light duty status. (Pl.'s Opp'n p. 6.)

*Denial of training*

Denial of training is only an adverse employment action if the employer denies necessary job training to an employee, thereby harming the conditions of her employment. *Eaton v. Wayne*

11

*Cent. Sch. Dist.*, 25 F. Supp. 3d 370, 375 (W.D.N.Y. 2014). There is no evidence that the training sessions at issue were necessary job training for Plaintiff. In fact, the record includes descriptions of these training sessions which indicate that they were designed for new officers or those looking for a refresher. (Defs'. Ex. X.)

### *Ordered to leave headquarters*

Plaintiff presented no evidence that being ordered to leave headquarters increased her total workload or otherwise caused her to work in addition to her existing responsibilities. *See Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014). Plaintiff also failed to show evidence that being forced to leave headquarters was harmful to a point that could dissuade a reasonable worker from making or supporting a charge of discrimination. *See Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).

### *Lack of reasonable investigation*

The record does not indicate that there was a lack of reasonable investigation into Plaintiff's discrimination claims, and even if it did, lack of reasonable investigation is not a materially adverse employment action. (Defs.' Ex. CC (report from Defendants' investigation into Plaintiff's harassment and disparate treatment claims)); *Milne v. Navigant Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *8 & n.16 (S.D.N.Y. Oct. 27, 2010) (dismissing the plaintiff's retaliation claim because an employee's knowledge that his employer declined to investigate a discrimination complaint is not a threat of harm or a deterrent).

### *Chronic absentee designation*

Plaintiff's designation as a "chronic absentee" was not an adverse employment action. *See Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275 (E.D.N.Y. 2005) (holding that a formal reprimand regarding the plaintiff's attendance record was not an adverse

employment action because it had no tangible effect on his employment). Assuming that the chronic absentee designation was an adverse employment action, Plaintiff does not offer evidence sufficient for a reasonable jury to find that Defendants' nondiscriminatory reason is pretext for retaliation. Plaintiff received the chronic absentee designation after a MVPD captain required "all sergeants to review their records and forward reports of 'Chronic Absent' recommendations to the Patrol Division office 'ASAP' " (Defs.' Ex. OO.) Plaintiff does not dispute that she was deemed a chronic absentee "solely based on statistics." (Pl.'s 56.1 ¶ 126); (Defs.' Ex. NN.) Plaintiff also testified that she did not appeal her chronic absentee determination. (Defs.' Ex. A (Pl. Dep. Tr. 113:25, 114:1 – 20).) Moreover, thirteen other MVPD employees, both male and female, in addition to Plaintiff were designated as chronically absent as a result of the email requiring sergeants to review their records. (Nawrocki Aff. ¶ 4, ECF No. 85.) Thus, the evidence shows that the Defendants had a legitimate reason for designating Plaintiff a chronic absentee.

### *Denials of 207-c benefits*

There is also no genuine issue of material fact that the denials of Plaintiff's request for 207-c benefits resulted from non-retaliatory reasons. The first denial was issued because Plaintiff failed to provide HIPAA forms or a list of medical providers as required. (Defs.' Ex. FF.) Plaintiff provided the required information and, in response, her request for 207-c benefits was re-opened. (Defs' Ex. HH); (Pl. Decl. Ex. 3.) Defendant Raynor then issued a revised denial of Plaintiff's request because (1) the injury did not occur as a result of the performance of her duties, (2) Plaintiff failed to produce medical evidence of a relationship between the alleged disability and an injury occurring as a result of the performance of her duties, and (3) Dr. Coyne's report indicated that Plaintiff's knee injury was not related to her April fall. (Defs.'

Exs. F (Raynor Dep. Tr. 88:12 – 25, 89:1 – 4) & JJ.)

The record reflects, and Plaintiff testified that, she was granted an appeal of this decision, was represented by counsel, and was permitted to call witnesses. (Defs.' Ex. A (Pl. Dep. Tr. 190:6 – 20).) After the appeal hearing, the denial of 207-c benefits was upheld based in part on Dr. Coyne's testimony. (Defs.' Ex. III.) Defendants provide the appeal decision report, which notes that Plaintiff did not call a medical expert to refute Dr. Coyne's testimony or otherwise show a connection between her fall and her injury. (*Id.*) Plaintiff failed to provide any evidence to rebut Defendants' legitimate reason for denying her request for 207-c benefits.

*Fitness for duty examination*

The record shows that Plaintiff was subjected to the fitness for duty examination based not on her complaints about discrimination but on her behavior. Defendant Dumser expressed concern that Plaintiff had "some animus towards female members of service, and Defendants include reports about Plaintiff's behavior from these female officers. (Defs.' Exs. H, K, L, M, N, O, R, EEE.) In his letter to Plaintiff, informing her of the examination, Defendant Raynor notes that Plaintiff had expressed thoughts of causing self-harm. (Nawrocki Aff. ¶ 8 & Ex. E); *see Gibson v. Conn. Judicial Dep't Court Support Serv. Div.*, No. 05-CV-1396(JCH), 2007 WL 1238026, at *5 (D. Conn. Apr. 25, 2007) (holding that the requirement of a mental fitness examination after allegations of workplace violence was not a materially adverse action, even after the allegations were found to be unsubstantiated). Plaintiff presents no admissible evidence that Defendants' reasons for requiring her to undergo the fitness for duty examination were pretext for discrimination.

*Internal affairs investigation*

There is no genuine issue of material fact that the Internal Affairs investigation was

conducted for a non-retaliatory purpose which was, according to Defendant Raynor's testimony, to determine who sent confidential information to the media. (Defs.' Exs. F (Raynor Dep. Tr. 99:8 – 23 & ZZ).) Plaintiff does not dispute the facts relating to this incident and offers no evidence to create a genuine issue of fact. (Pl.'s 56.1 ¶¶ 151 – 57.)

### *Denial of light duty status*

Finally, Plaintiff failed to present admissible evidence that Defendants' legitimate reasons for denying her light duty status were pretext for retaliation. Because the MVPD has limited light duty positions, it only permits officers who have work related injuries to work light duty, because those individuals are receiving disability payment already. (Defs.' Ex. F (Raynor Dep. Tr. 107:15 – 25, 108:1 – 12).) Defendant Goldman testified that officers with non-work related injuries have to be capable of working full duty before they return to work. (Defs.' Ex. E. (Goldman Dep. Tr. 49:5 – 17).) Plaintiff presented no admissible evidence that similarly situated individuals with non-work related injuries were permitted to work on light duty.

-

Accordingly, because there is no evidence from which a reasonable jury could conclude that Plaintiff established claims for retaliation, Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 78 and to close the case.

Dated: October 11, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge